## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAUREN PORSCH, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LLR, INC. d/b/a LuLaRoe, and LULAROE, LLC <br><br> Defendants. | Case No. 1:18-cv-9312 <br><br><br> Filed Electronically <br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Lauren Porsch ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant LLR, Inc. ("LLR") and LuLaRoe, LLC ("LLR LLC") (hereinafter, collectively, "LuLaRoe" or "Defendants"), and states:

## INTRODUCTION

1.      Defendants unlawfully charged a "sales tax" to consumers in tax-free jurisdictions in New York on their purchases of clothing.  LuLaRoe knew its collection of taxes in these jurisdictions was unlawful, but concealed this fact from consumers, actively misleading them regarding the legality of its practice.  This unlawful practice harmed Plaintiff and each class member in precisely the same manner.

2.      Plaintiff brings this action on behalf of herself and all others similarly situated to challenge Defendants' unlawful, unjust, deceptive and fraudulent practice, which damaged New York residents by including unauthorized overcharges on purchases for which no sales tax exists and seeks the following relief:  (1) actual damages in the form of a complete and accurate disgorgement of all unlawfully collected taxes;

(2) an accounting to ensure that the disgorgement is in fact complete and accurate; and (3) all available compensatory, statutory, and punitive damages, along with attorneys' fees and costs.

3. The class period is for all purchases made prior to or on February 16, 2017.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction of this action pursuant to the Class Action Fairness Act, 28 U.S.C §1332(d): the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000; this case is a class action in which at least some members of the proposed class have a different citizenship from Defendants; and there are more than 100 putative class members.

5. The Southern District of New York has personal jurisdiction over the Defendants named in this action because Defendants conduct substantial business in this District.

6. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b) because Plaintiff purchased products from Defendants in this District, and a substantial part of the acts and omissions giving rise to her claims occurred here.

## PARTIES

7. Plaintiff Lauren Porsch is and at all times relevant hereto has been a resident of New York City, New York.

8. LuLaRoe is a multilevel-marketing company that sells clothing through fashion retailers located in all fifty states to consumers across the United States.

9. Defendant LLR is incorporated in Wyoming and headquartered in California.

10.     Defendant LLR LLC is organized in and headquartered in California.

11.     Defendant LLR implemented the 2016 Tax Policy (defined *infra*) that is at issue in this Complaint and collected the unlawful sales tax at issue in this Complaint.

12.     Defendant LLR LLC enforced the unlawful 2016 Tax Policy at issue in this Complaint and LLR LLC owned the point-of-sale ("POS") system, Audrey, which was programmed to charge the unlawful surcharges complained of in this Complaint.

13.     According to the CEO of LLR, "there is not a clear distinction" between LLR and LLR LLC and the two companies convene an executive committee meeting every Monday that involves members of both companies and is not designated as an LLR or LLR LLC meeting.

14.     Accordingly, both Defendants were involved in perpetrating the deceptive and fraudulent conduct, explained more fully below.

15.     During the class period, LuLaRoe's retailers sold clothing at Minimum Advertised Pricing between $23-78 per item.

## STATEMENT OF FACTS

16.     Sales tax is a consumption tax on the purchase of goods or services assessed by some states and municipalities.

17.     A retail transaction is only subject to sales tax in the taxing authority where the goods are delivered.

18.     For example, when a buyer and seller reside in the same state, and the buyer takes possession of the purchased goods in that state, the sales tax laws of the buyer and seller's state govern the transaction.

19.    On the other hand, when the buyer and seller reside in different states, and the seller delivers the purchased goods from its state to the buyer's state, the sales tax laws of the buyer's state govern the transaction.

20.    LuLaRoe collects and remits sales tax on behalf of its retailers.

21.    New York state exempts clothing sold for less than $110 from state sales tax.   Similarly, clothing sold for less than $110 is exempt from local tax in numerous localities. *See* Dept. of Taxation and Finance, Pub. 718-C ("Sales of eligible clothing and footwear costing less than $110 in the [following jurisdictions] are fully exempt from all state and local sales and use tax (including the [Metropolitan Commuter Transportation District] tax)": Chautauqua County, Chenango County (outside the city of Norwich), City of Norwich, Columbia County, Delaware County, Greene County, Hamilton County, Tioga County, Wayne County, New York City.), available at https://www.tax.ny.gov/pdf/publications/sales/pub718c.pdf.

22.    This action is brought on behalf of consumers who had purchases of LuLaRoe clothing shipped into jurisdictions in New York that exempt clothing purchases under $110 from sales tax, and were improperly charged a sales tax on those purchases.

A. **LuLaRoe's Tax Practices Prior to April 2016**

23.    Beginning in 2014, LuLaRoe was being pressured by taxing authorities to remit tax on its retailers' sales.

24.    As a result, it initiated a relationship with Utah-based POS vendor ControlPad to implement a POS system called "Audrey."

25.     Audrey was introduced to retailers in or around May or June 2015 and LuLaRoe's policy and procedures, which the retailers contractually agreed to follow, required that LuLaRoe retailers "must" use the Audrey POS.

26.     Prior to April 2016, the Audrey system included a toggle-switch, which permitted LuLaRoe's retailers to turn off tax charges when they made a sale into a tax-free jurisdiction, preventing any improper tax charges to the putative class members.

**B. LuLaRoe Discovers it is Overpaying Sales Tax**

27.     In January 2016, LuLaRoe's Senior Tax Advisor undertook to reconcile LuLaRoe's prior tax filings.

28.     What he discovered was that, because of the way Audrey was programmed, LuLaRoe was paying sales tax on *all* sales regardless of whether or not the end consumer was charged or paid sales tax on a transaction (*i.e.*, LuLaRoe was overpaying sales tax because it was paying tax on the transactions shipped to class members).

29.     LuLaRoe manufactured a "solution" to address this tax dilemma: the 2016 Tax Policy (defined below), which was designed to wrongly shift the overpayments caused by the failures of LuLaRoe's Audrey system from LuLaRoe to its end consumers, including the Plaintiff and class members.

**C. LuLaRoe's Implementation of its 2016 Tax Policy**

30.     In April 2016, LuLaRoe announced its new tax policy via webinar and conference call: henceforth Audrey would be collecting tax from end consumers based upon retailer location, across the board, on every transaction, regardless of where the product was delivered (the "2016 Tax Policy").

31.     The use of Audrey, as *well as compliance with the new policy*, was not an option for retailers.  The new policy was sent by email to *all* LuLaRoe retailers.

32.     One retailer summarized the instruction from LuLaRoe as follows:

Sales Tax - LEAVE THE BOX CHECKED FOR SALES TAX IN ALL CIRCUMSTANCES FROM NOW ON - it will be calculated based on where you live. We can either start right now and charge you as retailers sales tax on the retail amount when you place your wholesale orders (a terrible solution that no one wants) - or, you all have to collect sales tax 100% of the time regardless of where it is being shipped. The Sales Tax will be calculated based on where YOU live and do business. This is NOT optional - you MUST leave the sales tax box checked - everyone NEEDS to charge Sales Tax based on the rate of the location where THEY DO BUSINESS on all purchases no matter what. The tax rate that your customer will be charged will be based on where YOU are. Keep the box checked. This is our process now - to remain in good standing with all the states. This is short term. In the long term, the software will get a new functionality and your customer will be charged tax based on the shipping destination in the future.

33.     Thereafter, LuLaRoe altered, or directed the alteration of, the Audrey POS to prevent retailers from turning off the sales tax feature when making sales delivered into other states with no sales tax, such as to class members' jurisdictions.

34.     LuLaRoe retailers were instructed not to change the sales tax rate calculated by Audrey, even for remote sales delivered to jurisdictions where the purchases were not taxable.

35.     As a result of LuLaRoe's new policy and the change in Audrey's functionality, when anyone from any jurisdiction, including jurisdictions without sales tax on clothing, purchased a LuLaRoe product, that consumer was automatically and systematically charged sales tax if the retailer was located in a jurisdiction which charged sales tax.

36.     By way of example, if a consumer from New York, New York purchased a LuLaRoe product online from a retailer in a state with sales tax on clothes, such as Ohio, and had that product shipped to New York, New York, LuLaRoe improperly charged the New York resident an Ohio state and local sales tax on that purchase.

D. **LuLaRoe Lies to its Retailers & Consumers Regarding the Legality of the 2016 Tax Policy**

37.     LuLaRoe's retailers are the front line point of communication with LuLaRoe's end consumers.

38.     Immediately after it enacted the unlawful 2016 Tax Policy, LuLaRoe issued a sales tax memorandum and "white paper" memorandum to all of its retailers, which was authored by Terrel Transtrum, a "licensed tax attorney with law degrees from University of Idaho (J.D.) and University of Miami (LL.M. – Masters of Law in Taxation)."

39.     In the "white paper," LuLaRoe told its retailers that the policy it implemented, requiring that tax be charged based upon the location of the retailer, was proper and legal.

40.     The "white paper" fraudulently claimed that it was proper to collect sales tax based on the retailer address, whether the customer is physically present or not, because it is as if the customer is purchasing from the retailers' homes.

41.     As repeatedly admitted by LuLaRoe's own officers, this information was false; LuLaRoe's "Ethics Specialist," who was part of LuLaRoe's management team, admitted that it was "not ethical" to collect tax from the class members when no tax should have been charged.

42.    LuLaRoe expected that the false information set forth in the white paper would be disseminated to the end consumers.

43.    LuLaRoe also knew and expected that, if questioned, retailers sent the sales tax memo out to LuLaRoe end customers.

44.    Indeed, LuLaRoe itself would send the sales tax memo out to end consumers who contacted LuLaRoe directly to question the validity of the sales tax policy.

E. **LuLaRoe Knew that its Sales Tax Procedures were Unlawful (and the White Paper, False) Yet Continued its Practices**

45.    Within a month of LuLaRoe issuing the fraudulent advice in the sales tax memorandum and white paper to its retailers (and, therefore, its end consumers) the Attorney General of the Commonwealth of Pennsylvania transmitted a consumer complaint to LuLaRoe, dated May 16, 2016, challenging LuLaRoe's illegal sales tax practices.

46.    On June 28, 2016, LuLaRoe responded to the Attorney General, *unequivocally admitting that LuLaRoe knew that its sales tax policy was overcharging people in states that did not have a sales tax on the clothing that LuLaRoe sells*.

47.    Despite this admission, LuLaRoe *did not* discontinue its improper sales tax policy or reinstitute the ability for retailers to remove sales tax charges on purchases sold outside of their state.

48.    By May 31, 2016, LuLaRoe had also received a notice from the State of Minnesota Office of the Attorney General requesting that LuLaRoe "review and correct

its systems to be in compliance with Minnesota sales tax law" and "determine the number of other Minnesotans who need to be refunded for paying sales tax."

49.     Yet again, LuLaRoe acknowledged its fault but did nothing discontinue its systematic practice of overcharging sales tax.

50.     Indeed, when it enacted its 2016 Tax Policy, LuLaRoe was aware that it would result in customers being incorrectly charged tax.  LuLaRoe's CEO, Mr. Stidham, admitted under oath in an unrelated Utah proceeding brought by its former payment processing vendor that LuLaRoe knew this class action was coming.

51.     Despite these acknowledgements and after admitting to two different states' Attorney Generals that its tax practices were unlawful, LuLaRoe continued to unlawfully surcharge its consumers until June 1, 2017.

52.     LuLaRoe did nothing to retract its statements to its retailers that what it was doing was proper and lawful, concealing its knowledge from those retailers and, by extension, its end consumers.

53.     LuLaRoe also continued to disseminate the false information in the sales tax memorandum and white paper well into 2017.

F.   **The Plaintiff's and Class Members' Experiences**

54.     Plaintiff resides in New York, New York, which exempts clothing purchases for any clothing item costing less than $110 from sales and use tax.

55.     Plaintiff Porsch made purchases from LuLaRoe retailers and had those purchases shipped to her home in New York, New York.

56.     During the class period, Plaintiff Porsch was charged a "sales tax" on at least thirteen (13) remote purchases that she made, totaling $50.63, or about 7% more

than the law allowed LuLaRoe to collect. Plaintiff Porch's purchase receipts are attached as Exhibit A.

57.     LuLaRoe's conduct was uniform to Plaintiff and all class members.

58.     Like Plaintiff, the class members all purchased LuLaRoe clothing from LuLaRoe retailers and had them shipped into jurisdictions in New York with no sales or use tax on such purchases.

59.     Plaintiff and every class member received an invoice from the retailer that was generated by LuLaRoe's Audrey system.

60.     The invoice represented that LuLaRoe collected a "sales tax" on the purchase.

61.     Plaintiff and every class member paid the invoice that implicitly represented they were paying a proper sales/use tax when, in fact, no such tax was owed by the Plaintiff and class members—a fact readily known by LuLaRoe.

62.     If a customer questioned LuLaRoe about the "sales tax," LuLaRoe perpetuated its deceptive practice by either falsely advising the customer that the tax was proper and lawful or directing the inquiry to the retailers for them to perpetuate LuLaRoe's deceptive practice.

63.     In turn, LuLaRoe's retailers were trained to uniformly inform the customer of the 2016 Tax Policy—set forth in the "white paper" and sales tax memorandum—wrongly claiming that LuLaRoe's deceptive practice was lawful (*i.e.*, that the tax was properly assessed based on retailer location).

64.     LuLaRoe has identified the transactions for which it incorrectly charged a non-existent "sales tax" to its end consumers in New York and was able to ascertain the

identity of the end consumers for those transactions and the amount of tax charged on those transactions.

65.     The harm to the class is consistent because of LuLaRoe's systematic, fraudulent conduct.

66.     LuLaRoe charged a fraudulent tax on at least 104,144 sales transactions shipped into non-taxing jurisdictions in New York from April 2016 through June 1, 2017.

G. **LuLaRoe is Sued on February 17, 2017 on Behalf of, _Inter Alia_, the Class**

67.     On February 17, 2017, a law suit styled as _Webster v. LLR, Inc._, was instituted in the Western District of Pennsylvania, alleging claims on behalf of class members in eleven states that have jurisdictions where there is no sales tax on the clothing LuLaRoe sells, but where those customers were charged the fraudulent tax – the class in _Webster_ included Plaintiff and the putative class members here.

68.     A motion for class certification was filed on December 6, 2017, on behalf of eleven subclasses representing eleven different states, including New York.

69.     On August 20, 2018, the _Webster_ Court denied certification based on the variations in state laws that would have to be addressed with the eleven subclasses.

70.     The District Court there made no findings on the merits, nor did the decision preclude filing this class action Complaint on behalf of New York residents because the issues that the court found precluded Rule 23 class certification in that action are no longer present in light of this action involving only one state's laws – that of New York.

H. **LuLaRoe's Improper Attempt to "Pick Off" the Class**

71.     From April 2016 until the *Webster* Complaint was filed, LuLaRoe stood by its decision to systematically and fraudulently surcharge its customers in the guise of "tax" going so far as to publish a white paper alleging that its improper conduct was lawful.

72.     Once its fraudulent practices became the subject of a class action (and media attention), only then did LuLaRoe change its tune.

73.     In a statement published on February 27, 2017, (after the filing of the complaint in *Webster*) a LuLaRoe spokesperson told Forbes Magazine:

> We have been aware of sporadic problems with our former payments vendor, which have increased over the past year with the fast growth of our company.
> …
> The issue involved 'our former payments vendor, which had a technology system failure that misidentified the accurate location of certain individuals.' Since that time, according to a company spokesperson, '[w]e have immediately reimbursed any individual whom we could identify as having been improperly charged sales tax.' Further, the company says '[w]e are proactively working to ensure that all affected individuals are refunded.'

*See* Forbes, Popular Fashion Line LuLaRoe Sued Over Sales Tax Charges, Feb 27, 2017, available at https://www.forbes.com/sites/kellyphillipserb/2017/02/27/popular-fashion-line-lularoe-sued-for-overcharging-customers-sales-tax/#5f4aeac7176d.

74.     As part of an apparent effort to put the genie back into the bottle regarding its unlawful collection of taxes at issue, **and only after the *Webster* lawsuit was filed,** LuLaRoe engaged in a confusing, ad hoc, refund scheme in a failed effort to escape responsibility for its bad acts.

75.     While these refund efforts will presumably be framed by Defendant as a belated effort to "do the right thing" by refunding the unlawful charges, LuLaRoe's refund effort—undertaken *after* it was caught with its hand in the cookie jar—does not save it from liability and, instead, is a concession of fault.

76.     LuLaRoe claims that it had a "plan" to refund the improper charges to all class members at some unknown future point, but did not actually undertake to make refunds to the class members until after the Complaint was filed.

77.     Shockingly, LuLaRoe takes the position that the refund "plan" was in place as of April 2016 –***the same time it created and distributed the false white paper and sales tax memo to its retailers***.

78.     The only logical conclusion is that LuLaRoe unequivocally knew when it instituted its 2016 Tax Policy that it was not in compliance with the laws and that the operation and effect of the policy would cause harm to its end customers.

79.     LuLaRoe actively hid this knowledge until after it was sued in court: LuLaRoe never announced it purported "plan" to retailers or end customers before the *Webster* Complaint was filed and it continued to disseminate the false sales tax memorandum to retailers and customers through and including February 2017, when the *Webster* Complaint was filed.

80.     Any suggestion that LuLaRoe's attempt to manufacture its own "remedy" to its fraud somehow excuses its egregious conduct is disingenuous.

81.     LuLaRoe's "remedy" provided class members with no basis for ascertaining what the amount of the overcharge was or whether the entire amount of the unlawful charge was refunded, nor did it compensate Plaintiff or the class members for

the full amount of their damages under the class claims (*i.e*, interest, statutory, and/or punitive damages).

82.     LuLaRoe admits that it refunded ***only*** the amounts it improperly charged without any interest or other damages (such as statutory damages).

83.     Indeed, while LuLaRoe alleges that it has refunded the $329,922.83 it overcharged the Plaintiff and putative class, LuLaRoe has suffered ***absolutely no*** consequence for its knowing and unlawful conduct towards the class because, in LuLaRoe's own words, the refund program, made well over a year after LuLaRoe's deception of its consumers began, was a "zero-sum" game for LuLaRoe.

84.     This scenario is the exact reason why states have consumer protection statutes.  LuLaRoe's belated refunds do nothing to defeat the class claims here.

## I. <u>LuLaRoe Benefited From the Use of Audrey and the Deceptive 2016 Tax Policy</u>

85.     While LuLaRoe has claimed that it did not benefit from its bad acts because it placed any unlawful "tax" it collected into a sequestered account, and paid that money to the retailers' (notably, not the consumers') taxing authority, such position ignores that the causes of action alleged herein ***are intended to protect the party harmed***, not focus on whether the bad actor benefitted from its deceptive conduct.

86.     For its retailers' mandatory use of Audrey, LuLaRoe received incentive payments from its payment processing vendor, totaling approximately $5.6 million in 2016 and $1.9 million in just the first two months of 2017. At the same time that LuLaRoe overcharged consumers nationwide in jurisdictions with no sales tax more than $8 million, LuLaRoe garnered $7.5 million in processing fees for its consumers' use of the Audrey POS system.

87.     Prior to implementing its unlawful 2016 Tax Policy, LuLaRoe was overpaying its sales tax obligations to taxing authorities on **all** purchases made by class members (when no tax was in fact charged because the toggle switch was used).

88.     LuLaRoe was indiscriminately paying sales tax because the information obtained from LuLaRoe's POS system did not distinguish between retailers' in-state sales and out of state sales.

89.     By implementing its 2016 Tax Policy, LuLaRoe improperly passed the costs associated with the shortcomings of its POS system and its indiscriminate tax payments onto its end consumers, including the class members.

90.     LuLaRoe's fraudulent 2016 Tax Policy was implemented at the expense of the class and was patently designed to save LuLaRoe from paying both: (i) the immediate costs associated with fixing the systemic flaws of its POS System; and (ii) its sales tax overpayments to the taxing authorities caused by Audrey's failures.

91.     Any suggestion by LuLaRoe that it did not receive a benefit from its deceptive acts is unsupportable.

## **CLASS ALLEGATIONS**

92.     Plaintiff bring this class action on behalf of herself and all other similarly situated class members under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and seeks to certify the following class:

> All persons who were assessed sales tax on clothing purchases from LuLaRoe up until and including February 16, 2017, who purchased clothing items costing less than $110, and who had the purchases delivered into a location in New York that does not assess a sales or use tax on such purchases.

93.    Excluded from the class are Defendants, as well as their past and present officers, employees, agents or affiliates and any judge who presides over this action.

94.    Plaintiff reserves the right to expand, limit, modify or amend the class definitions, including the addition of one or more subclasses, in connection with her motion for class certification, or at any other time, based on, among other things, changing circumstances and new facts obtained.

95.    <u>Numerosity</u>. The class described above is so numerous that joinder of all members is impracticable. The disposition of the individual claims of the respective class members will benefit the parties and the Court and will facilitate judicial economy.

96.    <u>Ascertainability</u>. The class members are ascertainable through records kept by Defendants. Plaintiff and class members were required to input their personal and financial information into Audrey to purchase products from LuLaRoe. Defendants record this information and the products the class members purchased in internal databases.  Indeed, LuLaRoe has already identified the class members.

97.    <u>Typicality</u>. Plaintiff's claims are typical of the claims of the members of the classes. The claims of each class member arise from the same course of conduct: LuLaRoe's requirement that class members pay for their purchases via an online point-of-sale payment platform that automatically assesses sales tax without consideration of the laws of the taxing authorities where the class members reside. The claims of Plaintiff and class members are based on the same legal theories and arise from the same unlawful conduct.

98.    <u>Existence and Predominance of Common Questions of Law and Fact</u>. This action involves common questions of law and fact, which predominate over any

questions affecting individual class members. These common questions include, but are not limited to, the following:

<blockquote>

a.    Whether Defendant collected funds from Plaintiff and individual class members under a nonexistent tax;

b.    Whether the law authorizes these converted funds;

c.    Whether Defendant lacked authority under the law to collect funds under a nonexistent tax;

d.    Whether Defendant's conduct was deceptive and likely to mislead consumers;

e.    Whether Defendant converted funds that lawfully belonged to Plaintiff and the class members;

f.    Whether Defendants charged Plaintiffs and class members tax based upon the location of the consultant or retailer who shipped the goods sold;

g.    Whether Defendants knew that the 2016 Tax Policy and/or POS system overcharged Plaintiff and class members a tax they did not owe;

h.    Whether Defendants redesigned the POS system to force Plaintiff and class members to pay a tax they did not owe; and

i.    The proper method by which to measure damages to which the class is entitled.

</blockquote>

99.    <u>Adequacy of Representation</u>. Plaintiff is an adequate representatives of the class because her interests do not conflict with the interests of the class members. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the class members and Plaintiff has no interests antagonistic to the class members. Plaintiff has retained counsel who are competent and experienced in class action litigation, and who possess specific expertise in consumer class actions.

100.   <u>Superiority</u>. The nature of this action and the nature of laws available to Plaintiff and the class make the use of the class action format a particularly efficient and appropriate procedure to afford relief for themselves and the class for the wrongs alleged. The damages or other financial detriment suffered by individual class members is relatively modest compared to the burden and expense that individual litigation of their claims against Defendant would entail. It would thus be virtually impossible for Plaintiff and class members, on an individual basis, to obtain effective redress for the wrongs done to them. Absent class action litigation, class members, and the general public would not likely recover, or would not likely have the chance to recover damages, and Defendant will be permitted to retain the converted proceeds of its fraudulent and deceptive misdeeds and would suffer no consequences for the fraud it committed on consumers in this state.

101.   <u>Choice of Law.</u> Plaintiff seeks to certify the class under the laws of New York.

## COUNT I
### New York General Business Law § 349

102.   The allegations contained in the previous paragraphs are incorporated by reference.

103.   Plaintiff brings this claim individually under the laws of New York, and on behalf of the Class.

104.   LuLaRoe's conduct at issue and described above was consumer oriented.

105.   New York General Business Law ("GBL") prohibits "deceptive acts and practices."  N.Y. Gen. Bus. Law § 349.

106.    LuLaRoe violated the GBL by engaging in the deceptive acts and practices described herein.

107.    Specifically, Defendants unlawfully charged and collected a sales tax on its clothing sales and failed to disclose that it was not authorized to collect such taxes, and actively misled consumers that its tax collection practice was lawful when it was not.

108.    LuLaRoe's representation that it was collecting a lawful tax was fraudulent and deceptive, because LuLaRoe had no authority to collect that tax and it was charged in violation of the law.

109.    Plaintiff and all class members suffered ascertainable losses that necessarily flowed directly from Defendants' fraud or deceit in its scheme to systematically overcharge its customers for its own benefit.

110.    Defendants intentionally violated the GBL by intentionally programming its online POS system to collect sales tax on clothing when such collection was unlawful and not authorized by the taxing authority of the buyer.

111.    Plaintiff and class members were injured by reason of Defendants' violations of the GBL.

112.    Defendants' conduct was intentional. Wrongful, reckless, and outrageous.

113.    Accordingly, Plaintiff and the class members seek actual damages, statutory damages, treble damages, punitive damages, and reasonable attorneys' fees.

## COUNT II
### Conversion and Misappropriation

114.    The allegations contained in the previous paragraphs are incorporated by reference.

115.    Plaintiff brings this claim individually under the laws of New York and on behalf of the Class.

116.    By its conduct, Defendants have converted and/or misappropriated funds belonging to Plaintiff and individual class members.

117.    Plaintiff and the class members had a possessory interest in the converted funds.

118.    Defendants intentionally interfered with that possession when they willfully and knowingly instituted an unlawful surcharge on Plaintiff and class members' purchases in the guise of a "tax."

119.    As such, Defendants' collection of sales tax converted and misappropriated the funds of Plaintiff and the members of the class without their consent.

120.    Defendants' conduct in intentionally and knowingly programming Audrey to unlawfully surcharge Plaintiff and class members was the legal cause of the loss of their funds.

121.    Defendants' conduct was intentional, wrongful, reckless, and outrageous

122.    Alternatively, if the conversion and/or misappropriation was not deliberate, it is the result of Defendants' recklessness and gross neglect.

123.    This conversion and misappropriation of funds benefitted and continues to benefit Defendants, while acting to the severe pecuniary disadvantage of Plaintiff and class members.

124.    Accordingly, Plaintiff and the individual class members and are entitled to recover damages, interest, and punitive damages.

## **PRAYER FOR RELIEF**

125.    Wherefore, Plaintiff, on behalf of herself and the other members of this class, requests this Court award relief against Defendants as follows:

    a.    Certifying the class and designating the named Plaintiff as the Class Representatives, and their counsel as Class Counsel;

    b.    Declaring Defendants' conduct described herein unlawful;

    c.    Awarding Plaintiff and the proposed class members actual, statutory and punitive damages;

    d.    Awarding attorneys' fees and costs; and

    e.    For such other relief as the Court may deem necessary or appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

| Dated: October 11, 2018 | By: | Respectfully Submitted, <br><br> */s/ E. David Hoskins* <br> E. David Hoskins, Esq., No. EH2235 <br> **THE LAW OFFICES OF** <br> **E. DAVID HOSKINS, LLC** <br> 16 East Lombard Street, Suite 400 <br> Baltimore, Maryland 21202 <br> (410) 662-6500 (Tel.) <br> davidhoskins@hoskinslaw.com |
|---|---|---|

|  |  | *To Be Admitted Pro Hac Vice*:<br>R. Bruce Carlson, Esq.<br>bcarlson@carlsonlynch.com<br>Kelly K. Iverson, Esq.<br>kiverson@carlsonlynch.com<br>Kevin W. Tucker, Esq.<br>ktucker@carlsonlynch.com<br><br>**CARLSON LYNCH SWEET**<br>**KILPELA & CARPENTER, LLP**<br>1133 Penn Avenue, 5th Floor<br>Pittsburgh, PA 15222<br>(p) (412) 322-9243<br>(f) (412) 231-0246 |
|  |  |  |